1 **WO**

2

3

4

5

6 **IN THE UNITED STATES DISTRICT COURT**

7 **FOR THE DISTRICT OF ARIZONA**

8

9 Deborah Jean Rowe, | No. CV-17-02558-PHX-GMS

10    Plaintiff, | **ORDER**

11 v.

12 Commissioner of Social Security
Administration,

13

14    Defendant.

15    Pending before the Court is Petitioner Deborah Jean Rowe's appeal of the Social

16 Security Administration's decision to deny disability insurance benefits and supplemental

17 security income benefits. (Doc. 16). For the following reasons, the decision of the Social

18 Security Administration is affirmed.

19 **INTRODUCTION**

20    Appellant Deborah Jean Rowe filed for benefits on March 1, 2013, alleging a

21 disability onset date of June 1, 2010. The Social Security Administration denied her

22 claim on August 1, 2013 and then again upon rehearing on January 6, 2014. She

23 submitted a written request for a hearing, and an administrative law judge (ALJ)

24 conducted a hearing on October 15, 2015. The ALJ determined that Rowe has two

25 severe impairments—bipolar disorder and borderline personality disorder. (Tr. 31). The

26 ALJ also found that Rowe has the residual functional capacity (RFC) to perform "work at

27 all exertional levels" but with limitations, including being limited to "simple, routine, and

28 repetitive work tasks involving simple work related decisions and simple instructions,"

1    needing a work "environment with few changes in the work setting," and needing to

2    avoid public contact and more than occasional contact with coworkers and supervisors.

3    (Tr. 34).

4         With these restrictions, the ALJ determined that Rowe would be unable to perform

5    her past relevant work, but that she would be able to work as an assembler, a packager, or

6    a presser. (Tr. 41–42). The ALJ therefore concluded that Rowe was not disabled under

7    the Social Security Act. (Tr. 42). Rowe requested review by the Appeals Council, but

8    was denied review on June 1, 2017. Rowe now appeals the ALJ's decision.

9    **DISCUSSION**

10   **I.    Legal Standard**

11        When reviewing social security appeals, courts address only the issues raised by

12   the claimant. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). If the court

13   finds that the denial of disability is unsupported by substantial evidence or based on legal

14   error, the denial will be set aside. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir.

15   2002). Substantial evidence is "more than a scintilla but less than a preponderance." *Id.*

16   (quotation omitted). It is "relevant evidence which, considering the record as a whole, a

17   reasonable person might accept as adequate to support a conclusion." *Id.* (quotation

18   marks omitted).

19        The ALJ is responsible for resolving conflicts in testimony, determining

20   credibility, and resolving ambiguities. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th

21   Cir. 1995). When evidence is "subject to more than one rational interpretation, [courts]

22   must defer to the ALJ's conclusion." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d

23   1190, 1198 (9th Cir. 2004). "[I]f the evidence can support either outcome, the court may

24   not substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981 F.2d 1016, 1019

25   (9th Cir. 1992) (citations omitted).

26   **II.   Analysis**

27        Rowe raises three issues on appeal. First, she alleges that the ALJ improperly

28   discounted the opinions of two treatment providers, Dr. Elizabeth Brown and nurse

1  practitioner Iris Ruddy. Second, Rowe alleges that the ALJ failed to properly evaluate

2  Rowe's credibility. Lastly, Rowe challenges the accepted hypothetical given to the

3  vocational expert (VE) by the ALJ. The objections lack merit, and the decision of the

4  ALJ is therefore affirmed.

5  ### A. Evaluation of Medical Evidence

6  Rowe contends that the ALJ failed to properly weigh the medical opinion evidence

7  in her case. The ALJ considered medical evidence from Dr. Brown, Ms. Ruddy, and Dr.

8  Andres Kerns, a state agency consultant. After considering the entire record, the ALJ

9  assigned partial weight to the opinion of Dr. Brown, significant weight to the opinion of

10  Dr. Kerns, and little weight to the opinion of Ms. Ruddy. (Tr. 39–40).

11  The relevant regulations create a hierarchy for medical opinions offered by

12  licensed physicians. The opinion of a treating physician is given more weight than non-

13  treating and non-examining medical sources. *See* 20 C.F.R. § 404.1527; *Orn v. Astrue*,

14  495 F.3d 625, 631 (9th Cir. 2007). When the treating doctor's opinion is uncontradicted,

15  the ALJ can reject those conclusions only for "'clear and convincing' reasons." *Lester v.*

16  *Chater*, 81 F.3d 821, 830 (9th Cir. 1995) (quoting *Baxter v. Sullivan*, 923 F.2d 1391,

17  1396 (9th Cir. 1991)). But when the opinion of a treating or examining physician is

18  contradicted, an ALJ may reject the contradicted opinion for "specific and legitimate

19  reasons that are supported by substantial evidence in the record." *Carmickle v. Comm'r*

20  *of Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008) (citation and internal quotation

21  marks omitted).

22  Dr. Brown was Rowe's treating physician. She opined that Rowe was moderately

23  to markedly limited in her "ability to carry out simple, one to two step instructions, the

24  ability to maintain attention and concentration for extended periods, and the ability to

25  complete a workday without interruptions from psychological based symptoms." (Tr. 39;

26  3122–23). She also opined that Rowe was markedly limited in her ability to use public

27  transportation and travel to unfamiliar places. (*Id.*). Further, Brown noted that Rowe had

28  problems with energy levels and would struggle to work in the mornings. (Tr. 3123).

1    Finally, Brown noted that when not symptomatic, Rowe would not miss work, but would

2    miss one to two months when she was symptomatic.  (*Id.*).  Dr. Brown's opinions were

3    contradicted by those of Dr. Kerns.  Kerns concluded that Rowe would be able to sustain

4    full-time employment with some limitations.  (Tr. 127).

5          There is substantial evidence to support the ALJ's decision to give Dr. Brown's

6    opinions partial weight and to give Dr. Kerns' opinions substantial weight.  The ALJ

7    concluded that Brown's opinions were inconsistent with the record, but that Kerns'

8    opinions were consistent with the record.  An ALJ may consider whether physicians'

9    opinions are consistent with medical records.  *Tommasetti v. Astrue*, 533 F.3d 1035,

10   1041–42 (9th Cir. 2008).  There is evidence in the medical records that Rowe was not as

11   limited as Brown believed and that Rowe's limitations never lasted for twelve continuous

12   months at any point during the relevant period.  Rowe self-reported that her mood was

13   "good;" (Tr. 2881); she was described by various examiners as "alert" and "oriented;"

14   (Tr. 2543; 3144; 3162; 3207); and she was appropriately dressed and groomed; (Tr. 769;

15   2414; 2915; 3144).

16          Further, Dr. Brown's opinions were inconsistent with Rowe's own testimony that

17   she was employed during some of the relevant time period.  Rowe argues on appeal—

18   citing case law from outside this Circuit—that any evidence of her employment part-time

19   is poor evidence of the ability to work full time.  That argument misses the point.  The

20   ALJ pointed out that Dr. Brown's opinions were inconsistent with evidence that Rowe

21   was able to work, but did not use Rowe's post-onset employment as evidence that she

22   was capable of full-time employment.  The fact that Rowe worked during the period is

23   evidence that she is capable of handling more stress than Dr. Brown's opinion suggested.

24   Cases in this Circuit have used evidence of post-onset employment to show that a

25   claimant's abilities are greater than assessed or alleged.  *See Drouin v. Sullivan*, 966 F.2d

26   1255, 1258 (9th Cir. 1992).

27   \ \ \

28   \ \ \

- 4 -

1    The ALJ gave Ms. Ruddy's opinions "little weight" for the same reasons—the

2    opinions were not consistent with the entire record. (Tr. 39). Pursuant to the regulations

3    for the applicable period an ALJ needs only a "germane reason" for discounting the

4    contradicted opinions of a non-licensed doctor. *See Molina v. Astrue*, 674 F.3d 1104,

5    1111 (9th Cir. 2012).[1] The reasons discussed above constitute a "germane reason."

6        Rowe also argues that the ALJ's statement that determinations of disability are

7    "reserved to the Commissioner" is an improper reason for discounting the opinions of

8    Dr. Brown or Ms. Ruddy. Even if the ALJ did err in making the statement, any error

9    would be harmless because the ALJ gave other specific, legitimate reasons based on

10   substantial evidence for discounting the opinions of Dr. Brown and Ms. Ruddy.

11       **B.    Evaluation of Rowe's Credibility**

12       Rowe next argues that the ALJ failed to properly evaluate her credibility. The

13   ALJ must engage in a two-step analysis to determine whether a claimant's testimony is

14   credible. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007). The ALJ must

15   first "determine whether the claimant has presented objective medical evidence of an

16   underlying impairment which could reasonably be expected to produce the pain or other

17   symptoms alleged." *Id.* at 1036. If she has, and the ALJ has found no evidence of

18   malingering, then the ALJ may reject the claimant's testimony "only by offering specific,

19   clear and convincing reasons for doing so." *Id.*

20   \ \ \

21

22   ---

        [1] The regulations under which the "germane reason" standard was articulated were
23   rescinded effective March 27, 2017. *See Powers v. Comm'r of Soc. Sec. Admin.*, No.
     CV-16-03427-PHX-GMS, 2018 WL 1182554, *2 n.2 (D. Ariz. Mar. 7, 2018). Under
24   those regulations, opinions of nurse practitioners like Ms. Ruddy were categorized as
     "other [medical] sources," *see* SSR 06-03p, 2006 WL 2329939 (Aug. 9, 2006), and were
25   not entitled to the same level of deference as were the opinions of "acceptable medical
     sources" such as licensed physicians. *See Molina*, 674 F.3d at 1111. The revised
26   regulations now include "Licensed Advanced Practice Registered Nurse[s], or other
     licensed advanced practice nurse[s] with another title" in the category of "acceptable
27   medical source[s]" so long as the nurse is giving opinions for "impairments within his or
     her licensed scope of practice." 20 C.F.R. § 404.1502(a)(7). However, this change
28   applies "only with respect to claims filed . . . on or after March 27, 2017." *Id.* The ALJ
     correctly applied the "germane reason" standard because Rowe applied for benefits on
     March 1, 2013.

1    If an ALJ finds that a claimant's testimony relating to the intensity of her pain and

2  other limitations is unreliable, the ALJ must make a credibility determination citing the

3  reasons why the testimony is unpersuasive. *See Bunnell v. Sullivan*, 947 F.2d 341 (9th

4  Cir. 1991). "In determining credibility, an ALJ may engage in ordinary techniques of

5  credibility evaluation, such as considering [a] claimant's reputation for truthfulness and

6  inconsistencies in [a] claimant's testimony." *Burch v. Barnhart*, 400 F.3d 676, 680 (9th

7  Cir. 2005). The ALJ must specifically identify what testimony is credible and what

8  testimony undermines the claimant's complaints. *See Morgan v. Comm'r of Soc. Sec.*

9  *Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).

10    These findings, properly supported by the record, must be sufficiently specific to

11  allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on

12  permissible grounds and did not arbitrarily discredit a claimant's testimony regarding

13  pain. *Bunnell*, 947 F.2d at 345–46 (internal quotation marks and citation omitted). So

14  long as the ALJ's credibility finding is supported by substantial evidence, reviewing

15  courts will uphold the determination. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir.

16  2002).

17    The ALJ's credibility determination was based on substantial evidence. First, the

18  ALJ found that Rowe's testimony regarding her personal care was inconsistent. Rowe

19  told the agency that she often failed to bathe herself for days at a time, but reported only a

20  few months later that she did not need any help with personal hygiene. (Tr. 284; 308;

21  769). Her treating physicians' notes often noted that she was neat and well-groomed.

22  (Tr. 2414, 2915, 3144).

23    Rowe also told an emergency room clinician that her frequent use of medical

24  facilities was attributable to her belief that she would be "able to get SSI faster" if she

25  frequently utilized medical services. (Tr. 515). At another time, a clinician noted her

26  concern that Rowe was only utilizing mental health services as a way to get away from

27  her home environment when it became overbearing. (Tr. 515). The clinician noted that

28  even though there was nothing wrong with Rowe's medications (other than the fact that

1 she had stopped taking them), she would frequently ask her treatment providers for "med

2 stabilization." (Tr. 515). This evidence undermined the credibility of Rowe's testimony

3 about her limitations.

4      Finally, the ALJ concluded that Rowe's alleged limitations were inconsistent with

5 some of the daily activities she reported. *See Rollins v. Massanari*, 261 F.3d 853, 857

6 (9th Cir. 2001) (inconsistencies between alleged limitations and daily activities are a

7 valid basis for discounting claims). Rowe spent time reading, listening to music, using

8 social media, going to the movies, working out at the gym, working part time, and

9 socializing with others. (Tr. 61, 353, 2296, 2347, 2876, 3113).

10      These apparent inconsistencies between Rowe's alleged limitations and her own

11 testimony constitute substantial evidence for the ALJ's credibility determination.

12 Though the evidence may be subject to more than one reasonable interpretation, the

13 ALJ's interpretation is reasonable, and this Court will not second-guess it. *Tackett v.*

14 *Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

15     **C.    RFC Finding and Hypothetical**

16      Rowe argues lastly that the ALJ erred by failing to accurately describe her

17 limitations in the hypothetical to the VE because the hypothetical failed to account for her

18 finding that Rowe has moderate difficulties with concentration, persistence, or pace. This

19 argument lacks merit. The ALJ reasonably accounted for her Step 3 findings regarding

20 Rowe's concentration, persistence, or pace by relying on the expert opinions of Dr. Kerns

21 to translate those limitations into concrete real-world limitations.

22      When posing a hypothetical to a VE, ALJs must "include all of the claimant's

23 functional limitations, both physical and mental." *Flores v. Shalala*, 49 F.3d 562, 570

24 (9th Cir. 1995). But in posing the hypothetical (which typically mirrors the RFC), the

25 ALJ may reasonably rely on a doctor's opinion to translate the broad paragraph B criteria

26 into more concrete, applicable limitations. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169,

27 1174 (9th Cir. 2008). "[A]n ALJ's assessment of a claimant adequately captures

28 restrictions related to concentration, persistence, or pace where the assessment is

consistent with restrictions identified in the medical testimony." *Id*.

Here the ALJ credited and relied on the opinion of Dr. Kerns, who concluded that Rowe has mild restrictions on the activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace, and one or two repeated episodes of decompensation, each of extended duration. (Tr. 124). Kerns further explained that Rowe is "moderately limited" in several areas regarding concentration, persistence, social interaction, and adaptation. Kerns' conclusion was that Rowe "is able to meet the basic mental and emotional demands of competitive, remunerative, unskilled work," including the capacity to "[u]nderstand, carry out, and remember simple instructions," "[m]ake simple work-related decisions," "[r]espond appropriately to supervision, co-workers, and work situations," and "[d]eal with routine changes in a work setting."[2] (Tr. 127).

The ALJ, in turn, concluded Rowe has the RFC "to perform a full range of work at all exertional levels" with limitations, including that Rowe

> is able to maintain adequate attention and concentration for simple routines. She could sustain a regular workday and workweek schedule. She could perform simple, routine and repetitive work tasks involving simple work related decisions and simple instructions. The claimant could work in an environment with few changes in the work setting. The claimant is unable to perform work requiring public contact. The claimant could occasionally engage in contact with coworkers and supervisors.

(Tr. 34). The ALJ's hypothetical to the VE during the hearing incorporated these limitations.

The ALJ's hypothetical to the VE was in line with the ALJ's RFC finding. The RFC finding is in line with Kerns' opinions regarding Rowe's limitations. Thus the RFC finding and the hypothetical adequately account for the ALJ's findings that Rowe was moderately limited in concentration, persistence, or pace. *See Stubbs-Danielson*,

---

[2] Kerns also opined that Rowe "is able to maintain adequate attention and concentration for simple routines and to sustain a workday/workweek schedule"; "is able to accept instructions and constructive criticism from a supervisor, and to interact, on a limited basis, with the public and with coworkers"; and "is able to adapt to simple changes, avoid obvious hazards, and travel." (Tr. 127).

539 F.3d at 1174.

Rowe contends, citing *Brink v. Comm'r of Soc. Sec. Admin.*, 343 Fed. Appx. 211 (9th Cir. 2009), that the ALJ's hypothetical is reversible error. *Brink* is not controlling here. As an initial matter, *Brink* is an unpublished memorandum and is not binding precedent. Further, *Brink* failed to persuasively distinguish *Stubbs-Danielson*'s holding that ALJ's can reasonably rely on a doctor's opinion that translates the paragraph B criteria into concrete workplace limitations. 539 F.3d at 1174. Courts throughout this circuit and indeed the Ninth Circuit itself continue to follow *Stubbs-Danielson*, and *Brinks* seems an outlier. *See*, *e.g.*, *Stommes v. Comm'r of Soc. Sec. Admin.*, No. CV-17-00071-PHX-DLR, 2018 WL 1531706, \*2–\*3 (D. Ariz. March 29, 2018) (noting that *Stubbs-Danielson* carries more weight as a published decision and that *Brink* is an outlier "even among unpublished decisions"); *Calisti v. Colvin*, No. 1:14-cv-02000-SKO, 2015 WL 7428724, at \*9 (E.D. Cal. Nov. 23, 2015) (criticizing the reasoning in *Brink* and following *Stubbs-Danielson*); *Israel v. Astrue*, 494 Fed. Appx. 794 (9th Cir. 2012). Under *Stubbs-Danielson*, the ALJ's Step 3 findings were accounted for in her hypothetical to the VE.

## CONCLUSION

The ALJ's determination that Rowe is not disabled under the Social Security Act is supported by substantial evidence, and Rowe's challenges to that determination lack merit.

**IT IS THEREFORE ORDERED** that the decision of the Social Security Administration is **AFFIRMED**. The Clerk of Court is directed to enter judgment accordingly.

Dated this 26th day of November, 2018.

_G. Murray Snow_
G. Murray Snow
Chief United States District Judge

- 9 -